## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
**Miami Division**

REBECCA SMITH, HOUSING OPPORTUNITIES
PROJECT FOR EXCELLENCE, INC. ("HOPE"),
ELIZABETH HOLSTON, JASMIN ROBERSON,
JASON ROSE, and KELVEN DAVIS,

     Plaintiffs,

vs.            Case No.

BEVERLY HILLS CLUB APARTMENTS, L.L.C.,
UNITED PROPERTY MANAGEMENT, Inc.,
IDALIO RIVERO, and RUSTHBELL KATHERINA
GARCIGA,

     Defendants.
_____/

## COMPLAINT FOR HOUSING DISCRIMINATION
## ON THE BASIS OF RACE

**and**

## JURY DEMAND

1.  This is a civil action seeking a declaratory judgment, permanent injunctive relief, and damages for discrimination in the rental of housing on the basis of race. This action arises under the Fair Housing Act, 42 U.S.C. § 3601, et seq.; and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982.

### Jurisdiction and Venue

2.  Jurisdiction is invoked pursuant to 42 U.S.C. § 3612 in that Plaintiffs elect to assert their claims of housing discrimination in a civil action; pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) in that this is a civil action seeking to redress the deprivation of the right to fair housing secured to the Plaintiffs by the Fair Housing Act and the Civil Rights Act of 1866;

pursuant to 28 U.S.C. § 1337 in that defendants' unfair housing practices create a restraint on commerce; and pursuant to 28 U.S.C. §§ 2201 and 2202 for declaratory and injunctive relief.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the claims arose in this district and Defendants conducts business in this district.

## Parties

4.      Plaintiff Rebecca Smith, an African American woman, is a leasing agent at Aventura Harbor Apartments.  Ms. Smith was intimidated and threatened, including being denied housing herself, on account of her race and also because she aided and encouraged black persons in the exercise and enjoyment of their rights under the Fair Housing Act and Civil Rights Act.  Ms. Smith was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendants.

5.      Plaintiff, Housing Opportunities Project for Excellence, Inc., (hereinafter "HOPE"), is a Florida not-for-profit corporation headquartered in Miami, Florida.  HOPE provides information about and seeks to enforce fair housing laws for the people of south Florida who have been unjustly denied access to housing.  HOPE attempts to accomplish these goals by empowering people through education, advocacy, and enforcement of fair housing laws.  HOPE engages in testing for fair housing law violations, pursuing enforcement of meritorious claims, conducting fair housing education and outreach, and special housing related programs designed to prevent and eliminate discriminatory housing practices and encourage equal housing opportunity.  HOPE is funded, in part, by the United States Department of Housing and Urban Development (U.S. HUD) to provide fair housing education, outreach, and fair housing investigations in South Florida.

{07116064;1}

6.      Plaintiff Elizabeth Holston is an African American tester for HOPE who sought information from Defendants about the availability of apartments at Aventura Harbor Apartments. Ms. Holston was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendants.

7.      Plaintiff Jasmin Roberson is an African American tester for HOPE who sought information from Defendants about the availability of apartments at Aventura Harbor Apartments. Ms. Roberson was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendants.

8.      Plaintiff Jason Rose is an African American tester for HOPE who sought information from Defendants about the availability of apartments at Aventura Harbor Apartments. Mr. Rose was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendants.

9.      Plaintiff Kelven Davis, an African American woman, sought information from Defendants, independently of HOPE, about the availability of apartments at Aventura Harbor Apartments.  Ms. Davis was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendants.

10.      Defendant, Beverly Hills Club Apartments, L.L.C., is the owner of Aventura Harbor Apartments, located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida.

11.      Defendant, United Property Management, Inc., is responsible for the management of Aventura Harbor Apartments.   Defendant, United Property Management, Inc., is also responsible for the hiring and supervising of all leasing agents at Aventura Harbor Apartments. This is the fourth time that Defendant United Property Management, Inc. has been sued for

housing discrimination on the basis of race at the Aventura Harbor Apartments, formerly called the Beverly Hills Club Apartments.  The prior three lawsuits for housing discrimination, two brought by the United States' Department of Justice, and one by HOPE, Inc. and private plaintiffs, resulted in Consent Decrees, injunctive relief, damages, fines, and attorneys' fees.

12.     Defendant Idalio Rivero is the manager at Aventura Harbor Apartments, and as such is an agent of Defendants Beverly Hills Club Apartments, L.L.C., and United Property Management, Inc.  At all relevant times, Defendant Rivero was acting within the course and scope of his employment with Defendants Beverly Hills Club Apartments, L.L.C., and United Property Management, Inc.

13.     Defendant Rusthbell Katherina Garciga is a leasing agent at the Aventura Harbor Apartments, and as such is an agent of Defendants Beverly Hills Club Apartments, L.L.C., and United Property Management, Inc.  At all relevant times, Defendant Garciga was acting within the course and scope of her employment with Defendants Beverly Hills Club Apartments, L.L.C. and Defendant United Property Management, Inc.

## Factual Allegations

### *Rebecca Smith*

14.     In January of 2014, Rebecca Smith, an African American woman, was hired by Defendant United Property Management, Inc., to work as a leasing agent for Aventura Harbor Apartments.

15.     Working there for nearly twenty-one months, Ms. Smith has observed the racist policies and practices of the staff at Aventura Harbor Apartments.

16.     Ms. Smith has observed a prospective African American renter being told that no apartments were available to rent when in fact apartments were available.

{07116064;1}

17.     Ms. Smith has also observed black people being given the wrong price for apartments – one or two hundred dollars higher than the listing price – to dissuade them from renting.

18.     Ms. Smith has also observed leasing agents wrongly disqualify black people from renting at Aventura Harbor Apartments after they left the leasing office.

19.     Ms. Smith has even observed black peoples' names being erased from the visitors' log that records all potential renters, preventing subsequent follow-up with them.

20.     Ms. Smith has endeavored to give prospective African American renters correct information regarding apartment pricing and availability.

21.     However, Ms. Smith experienced this discrimination firsthand when her own application for housing at Aventura Harbor Apartments was effectively denied.

22.     Defendant United Property Management, Inc., has a policy of offering their employees who work as leasing agents at Aventura Harbor Apartments and desire to live there a 25% discount in rent.  A 15% discount is available for its employees to live at "sister" properties also managed by Defendant United Property Management, Inc.

23.     On January 9, 2015, Ms. Smith sought an apartment for herself and her sister at Aventura Harbor Apartments at the stated discount rate of 25% off.

24.     Ms. Smith was told by her assistant manager that the employee discount rates had changed in April of 2014 and that she would only have a 15%, rather than 25%, discount.

25.     In fact, at least two Aventura Harbor employees, including Defendant Rusthbell Katherina Garciga, were offered a 25% discount in rent in Defendant United Property Management, Inc., apartments they were planning to move into after April 2014.

26.     In addition Ms. Smith was also told by her manager Defendant Idalio Rivero that she would have to pay a $125 dollar per month fee for upgrades – an updated kitchen and a washer/dryer in the unit.

27.     In fact, when Defendant Rivero told Ms. Smith she would be charged for upgrades, at least one Aventura Harbor employee was not being charged for their washer/dryer upgrade and another employee, Defendant Garciga, was told they would not have to pay the $125 dollar per month fee for upgrades on an apartment she would renting soon.

28.     In addition, and despite the fact she was an employee, Ms. Smith was also told by Defendant Rivero that she would need to present her ID, social security number, and proof of income and her sister's ID, social security number, and proof of income and that Defendant United Property Management, Inc., would run a background check on both of them in order to rent an apartment.  In addition, Defendant Rivero told Ms. Smith that her sister would be charged a $95 dollar application fee.

29.     In fact, it was the policy of Defendant United Property Management, Inc., to not conduct background checks on employees seeking to live in apartment complexes where they worked.  Thus, white and/or Hispanic employees were only asked for their ID and not asked for their social security number or proof of income.

30.     Further, white and/or Hispanic employees were only asked to pay a one-time occupancy fee of $35 for other occupants and were not asked to pay an application fee of $95 dollars for other occupants when they applied for housing.

31.     The assistant manager subsequently filed an internal complaint on Ms. Smith's behalf to Defendant United Property Management, Inc.'s legal department.

32.     Ms. Smith met with a legal representative of Defendant United Property Management, Inc., on January 27, 2015.  After observing that at least two other Aventura Harbor employees were currently receiving or were offered at least a 25% discount rate for their housing and did not have to submit to a background check, and because she did not desire to live in a place which discriminates, Ms. Smith told the representative that she was no longer interested in living at Aventura Harbor Apartments.

33.     Ms. Smith was never offered a 25% employee discount rate to live at Aventura Harbor Apartments.

### *HOPE Tests*

34.     In 2015, HOPE began to test for race discrimination at Aventura Harbor Apartments.

### *The First Set of Tests*

35.     At approximately 11:14 a.m. on February 5, 2015, Elizabeth Holston, an African American tester for HOPE, entered the leasing office of Aventura Harbor Apartments.

36.     After waiting approximately fifteen minutes, Defendant Garciga approached Ms. Holston.

37.     Ms. Holston stood up and told Defendant Garciga she was looking for a two-bedroom apartment.

38.     Defendant Garciga asked how soon Ms. Holston needed the apartment and Ms. Holston said as soon as possible.

39.     Defendant Garciga walked with Ms. Holston to the first unit, a two-bedroom unit which was vacant and had no electricity.  Defendant Garciga said that the unit was $1,405 dollars per month.

{07116064;1}

40.     Defendant Garciga then showed Ms. Holston a second unit, which was bigger, and said it was $35 dollars more per month.  The second unit was located in building "5" and was number "223."

41.     Defendant Garciga then showed Ms. Holston a third, newer unit on the first floor of another building.  She showed Ms. Holston the kitchen only.  This unit was upgraded, fully furnished, and had electricity.  Ms. Holston attempted to walk past the kitchen, which was at the entrance.  Defendant Garciga stood in the way and prevented Ms. Holston from seeing the third unit.

42.     Once back at the leasing office, Defendant Garciga said that the application was $95 dollars per person.

43.     Defendant Garciga asked Ms. Holston, "how many people and who was moving with [her]?"  Ms. Holston said she and her husband would be moving.

44.     Defendant Garciga did not inform Ms. Holston about any move-in specials or about any amenities at Aventura Harbor Apartments.

45.     Ms. Holston thanked Defendant Garciga and exited the office at approximately 11:49 a.m.

46.     That same day at around 1:54 p.m., Ms. Holston returned to the leasing office.

47.     Ms. Holston asked Defendant Garciga on what date she could move in and in which apartment.  Defendant Garciga said, "I have one now and it's for him."  A white man who looked to be in his early twenties was sitting in front of Defendant Garciga.

48.     Ms. Holston then asked Defendant Garciga, "When is the next one available?" Defendant Garciga said, "In March."   In fact, Defendant Garciga's statements that no two-bedroom apartments were available and that the next one would be available in March were

false.  On February 4th, at least eight two-bedroom apartments were available to rent at Aventura Harbor.

49.     Defendant Garciga said that Ms. Holston needed to pay $495 dollars to start the process.

50.     Defendant Garciga did not give Ms. Holston an exact move-in date.

51.     When Ms. Holston asked Defendant Garciga which unit would be available in March, Defendant Garciga said, "I'll pick one for you."

52.     Ms. Holston thanked Defendant Garciga and left at approximately 2:09 p.m.

53.     At approximately 12:45 p.m. on February 5, 2015, Yxey Abreu, a Hispanic tester for HOPE, arrived at Aventura Harbor Apartments.

54.     As she walked into the leasing office, the female receptionist asked Ms. Abreu for her ID and asked what she was looking for.  Ms. Abreu said she was looking for an apartment and the receptionist told her to take a seat.

55.     After waiting approximately ten minutes, Defendant Garciga walked over to Ms. Abreu.  Defendant Garciga then walked to her desk and Ms. Abreu followed her.

56.     Ms. Abreu told Defendant Garciga that she was looking for a "two-two" apartment to move into as soon as possible.  Defendant Garciga said she had an apartment available to move into as soon as tomorrow.

57.     Defendant Garciga said to follow her.  Defendant Garciga took Ms. Abreu to a second-floor unit.  Defendant Garciga opened the door and told her to look around.  Ms. Abreu saw the unit was clean, had electricity, and was ready to be moved into.

58.     Ms. Abreu asked if the apartment complex had laundry rooms and Defendant Garciga said that there are laundry rooms on each floor.  Defendant Garciga said that she could have a washer/dryer put into the unit for $75 dollars per month.

59.      Once back at the office, Defendant Garciga said she would give Ms. Abreu an application form.  Defendant Garciga signed her name on the form and handed it to Ms. Abreu.

60.     Ms. Abreu said goodbye and exited the building at approximately 1:28 p.m.

### *The Second Set of Tests*

61.     At approximately 2:18 p.m. on March 6, 2015, Jasmin Roberson, an African American tester for HOPE, arrived at Aventura Harbor Apartments.

62.     Ms. Roberson walked into the leasing office and walked up to a female receptionist.

63.     Ms. Roberson said, "I'm here to ask about an apartment, one bedroom."  The receptionist handed Ms. Roberson an information sheet and instructed her to have a seat.

64.     After waiting approximately seven to eight minutes, Defendant Garciga looked up at Ms. Roberson and asked, "Yes?"

65.     Ms. Roberson walked over to Defendant Garciga and said she was interested in a one-bedroom apartment.

66.     Defendant Garciga said that there were no apartments currently available but that an apartment would be available toward the end of the month around March 20th.  In fact, Defendant Garciga's assertion that no apartments were available was false as there were at least five one-bedroom apartments available for rent on March 6th.

67.     Defendant Garciga then explained the fee requirements.  Defendant Garciga said that they would need Ms. Roberson's credit history to determine the move-in fees.  Defendant Garciga said she would need "criminal [checks] of course to see if you qualify."

68.     Defendant Garciga said she would also need income verification.  Defendant Garciga said to prove income Ms. Roberson would need to provide paystubs, bank stubs, or W2's.

69.     Defendant Garciga said that she would also have to provide her ID and social security card.

70.     Defendant Garciga said there was an application fee of $95 dollars and said, "I'm not sure who all will be [living in the apartment]."  Defendant Garciga said that the fee would apply for each individual living in the apartment.  Defendant Garciga said, "again, [I'm] not sure who is going to be with you but anyone older than 18 has to have a background check and that's what the $35 dollars is for."

71.     Ms. Roberson said that it would be her and her husband living in the apartment.  Ms. Roberson said that, "with the marriage certificate it would be $95 dollars for both."  Defendant Garciga said that there would also be a $400 dollar holding fee and a $250 dollar administrative fee.

72.     Defendant Garciga said that rent includes maintenance services, which are available from Monday to Friday and on the weekend for emergencies.  Defendant Garciga said that electricity, water, and cable is not included in rent.

73.     Defendant Garciga showed Ms. Roberson the floor plan on a brochure.  She said that there is a $50 dollar per month fee to have a washer/dryer installed in a unit.  Defendant Garciga said that there are laundry facilities as well.

{07116064;1}

74.     Defendant Garciga advised Ms. Roberson that it would cost $1,945 dollars to move in, which included the $250 dollar administrative fee, $1,100 dollars for first month's rent, a $500 dollar deposit with approved credit, and a $95 dollar application fee for a married couple. Defendant Garciga said that the deposit could be $1,000 dollars or $750 dollars depending on Ms. Roberson's credit history.  Defendant Garciga also said that there was an additional $400 dollar holding fee.

75.     Ms. Roberson thanked Defendant Garciga and said she would be in contact if this was her choice.

76.     Defendant Garciga asked if Ms. Roberson would like to look at a model apartment.  Ms. Roberson said she would.

77.     While on the way to the model apartment, Defendant Garciga said that the pool area was being renovated and there would be new landscaping.  Defendant Garciga also said some of the apartments were being renovated.  Defendant Garciga said, for a fee, Ms. Roberson could move into one of the newer units.

78.     Defendant Garciga went to Apartment 105 and Ms. Roberson walked around the unit.

79.     While on the way back to the leasing office, Defendant Garciga said that Ms. Roberson could come back when she was ready to complete an application.

80.     At the office, Ms. Roberson shook Defendant Garciga's hand and left at approximately 2:50 p.m.

81.     At approximately 3:39 p.m. on March 6, 2015, Stephanie Rivera, a Hispanic tester for HOPE, arrived at Aventura Harbor Apartments.

82.     Ms. Rivera walked into the leasing office and told the female receptionist she would like to speak to a leasing agent.  The receptionist asked Ms. Rivera for her ID and phone number.  The receptionist said an agent would be with her in a minute.

83.     The receptionist called someone on the phone and then Defendant Garciga walked over and shook Ms. Rivera's hand.  Defendant Garciga then motioned for Ms. Rivera to go over to her desk.  Ms. Rivera said she was looking for a one-bedroom apartment to rent as soon as possible.  Defendant Garciga said that a woman who came in looking for an apartment yesterday was able to move in today.

84.     Defendant Garciga motioned for Ms. Rivera to follow her.  Defendant Garciga said that they were walking to building two.  Defendant Garciga asked Ms. Rivera what was her price range and Ms. Rivera said a little over $1,000 dollars.  Defendant Garciga said that she will show her an apartment for $1,150 dollars per month.  Defendant Garciga showed Ms. Rivera Apartment 105.  Defendant Garciga told Ms. Rivera about the kitchen, living room, balcony, bedroom, bathroom, closet, and pantry.

85.     Defendant Garciga said that there are laundry facilities on the second floor. Defendant Garciga said that there is a parking garage which includes guest parking.

86.     While walking back to the leasing office, Defendant Garciga said that she like buildings three and five best.

87.     Defendant Garciga also asks Ms. Rivera if she is single.  Ms. Rivera said she is married.  Defendant Garciga said that both Ms. Rivera and her husband must pass background checks.  Defendant Garciga said that applicants will be rejected if they have criminal records or evictions.

{07116064;1}

- 13 -

88.     Defendant Garciga walked Ms. Rivera to the pool and told her that there is 24-hour security.   Defendant Garciga said that there are people from all different backgrounds residing there.

89.     Defendant Garciga said that there is a pet fee of $750 dollars and $250 dollars of that fee is refundable.

90.     Defendant Garciga said that the move-in fee will be cheaper if her and her husband's credit is good.

91.     Defendant Garciga said that she would give Ms. Rivera an application to take home should she and her husband agree they are interested.

92.     Defendant Garciga said that she hoped Ms. Rivera liked the complex.  Defendant Garciga told Ms. Rivera to have a great day.  Ms. Rivera told Defendant Garciga to have a great day too and she left the office at approximately 3:53 p.m.

93.     Ms. Rivera called the leasing office at 5:13 p.m. on March 6th and there was no answer.  Ms. Rivera called again at 5:14 and spoke to Defendant Garciga.

94.     Ms. Rivera asked Defendant Garciga what time the office closed, whether they accept cashier's checks or money orders, and if the rent was really $1,150 dollars per month.  Defendant Garciga said that the office closed at 5:30 p.m., they accept cashier's checks, money orders, and online payments, and that the rent was $1,150 dollars.

95.     Ms. Rivera then called back to ask how soon she could move into an apartment.  Ms. Rivera's phone call was placed on hold and she hung up.  Defendant Garciga called back at approximately 5:21 and told Ms. Rivera that if she had everything she needed from her and her husband, they could move in tomorrow.   Defendant Garciga said that she could hold an

apartment for her if Ms. Rivera completed the online application before 6:00 p.m.  Ms. Rivera thanked Defendant Garciga and hung up the phone.

***The Third Set of Tests***

96.     At approximately 3:07 p.m. on May 3, 2015, Jason Rose, an African American tester for HOPE, arrived at the leasing office of Aventura Harbor Apartments.

97.     After waiting approximately two minutes, the receptionist signed Mr. Rose into the log and asked him to take a seat.  After waiting approximately five more minutes, Defendant Garciga arrived and introduced herself to Mr. Rose.

98.     Defendant Garciga asked what brought Mr. Rose to their location.  Mr. Rose said he was moving in with his fiancé and was looking for an apartment with more space closer to this side of town.

99.     Defendant Garciga asked where Mr. Rose currently lived and he said East Hollywood.

100.     Defendant Garciga then showed Mr. Rose around the apartment complex, beginning with the pool area.

101.     Defendant Garciga asked Mr. Rose what his anticipated rent was and Mr. Rose said that he is open and would like to see what the average cost of a two-bedroom apartment in a decent area is.  Defendant Garciga said that the apartments costs between $1,475 and $1,525 dollars along with a deposit that would be based on credit.

102.      Defendant Garciga offered to show Mr. Rose a model, two-bedroom apartment and they walked to the model apartment in a building next to the leasing office.  Defendant Garciga told Mr. Rose that a washer/dryer would be available in the unit for an addition $75 dollars per month.

{07116064;1}

103.     Defendant Garciga opened the door to Apartment 107 and showed Mr. Rose around.  Defendant Garciga said that the neighborhood is quiet with nice people and is in close proximity to entertainment and shopping.

104.     Defendant Garciga said that no two-bedrooms were currently available. Defendant Garciga said that there would be an opening around the middle of the month.

105.     Mr. Rose said that he liked the place and thanked Defendant Garciga for showing it to him.  Defendant Garciga thanked Mr. Rose for coming and they walked back to the leasing office.  Mr. Rose left at approximately 3:21 p.m.

106.     After Mr. Rose left, Defendant Garciga disqualified him from renting an apartment at Aventura Harbor Apartments by writing in her notes that Mr. Rose did "no[t] [have] enough income."  Yet Defendant Garciga never asked Mr. Rose about his income.

107.      At approximately 3:31 p.m. on May 3, 2015, Fabio Palmini, a Hispanic tester for HOPE, arrived at the leasing office of the Aventura Harbor Apartments.

108.     Mr. Palmini was greeted by a female receptionist who wrote down his name and contact information.  Mr. Palmini took a seat and was then immediately called over to the desk of Defendant Garciga.

109.     Defendant Garciga asked what kind of apartment Mr. Palmini was looking for and he said he was looking for a two-bedroom apartment.

110.     Defendant Garciga asked if there was a price range and time line to move in and Mr. Palmini said that his price range was within $1,500 dollars and he was looking to move around mid-May or the beginning of next month.

111.    Defendant Garciga said that there were not apartments available that soon but that there were a couple of apartments within that range that would be available sometime next month and one in particular for July 15th.

112.    Defendant Garciga offered to show Mr. Palmini a model apartment and they walked to the apartment.   On the way, Defendant Garciga showed Mr. Palmini the pool. Defendant Garciga said that residents have access to a carwash in the complex and said that there is a gym and tennis courts.

113.    Defendant Garciga opened the door to Apartment 107 and let Mr. Palmini inside. Defendant Garciga said that the rent is $1,425 dollars per month.   Defendant Garciga said that for an extra $75 dollars per month a washer/dryer would be placed in the unit.   Defendant Garciga said that there is a laundry room on every floor of every building in the complex.

114.    On the way back to the leasing office, Defendant Garciga said that Mr. Palmini needs to earn at least three times the rent price to be allowed to move in and would also need to bring his last three pay stubs to verify his income.

115.    Mr. Palmini wrote down the information Defendant Garciga gave him.   Defendant Garciga handed Mr. Palmini her business card and Mr. Palmini left at approximately 3:45 p.m.

116.    After Mr. Palmini left, Defendant Garciga did not disqualify him from renting at Aventura Harbor Apartments.

### *Kelven Davis*

117.    At approximately 11:53 a.m. on September 2, 2015, Kelven Davis and Markenson Jeanty arrived at Aventura Harbor Apartments and entered its leasing office.   Ms. Davis, an African American woman and small business owner, was seeking a one-bedroom apartment for

$1,200 dollars for herself and her partner.  Mr. Jeanty is an agent at Renter's Paradise.  Ms. Davis went to Renter's Paradise in order to find a two-bedroom apartment.

118.    After waiting about fifteen minutes, Ms. Davis and Mr. Jeanty spoke with Defendant Rusthbell Katherina Garciga at her desk.  Ms. Davis said that she was looking for a one-bedroom apartment and that her maximum price was $1,200 dollars.

119.    Defendant Garciga said a one-bedroom apartment would be $1,376 dollars.

120.    In fact, Defendant Garciga's statement that a one-bedroom apartment would be $1,376 dollars was false.  On September 2nd, there was at least one one-bedroom apartment available for rent in October for $1,201 dollars or $1,276 dollars with upgrades.  In addition, there was at least one one-bedroom apartment available for rent in October for approximately $1,176 dollars.

121.    After Defendant Garciga told Ms. Davis that a two-bedroom apartment would be $1,376 dollars, Ms. Davis and Mr. Jeanty thanked Defendant Garciga and left the leasing office.

122.    After Ms. Davis and Mr. Jeanty left, Defendant Garciga disqualified Ms. Davis from renting an apartment at Aventura Harbor Apartments by writing in her notes that she could only afford to spend $1,100 dollars per month.

123.    Yet Defendant Garciga never asked Ms. Davis about her income.

124.    Ms. Davis could have easily afforded the rent.  Ms. Davis currently lives in an apartment priced at $1,548 dollars per month.  The one-year lease on that apartment will be up on October 5, 2015.

125.    After Ms. Davis and Mr. Jeanty left, and after observing their conversation with Defendant Garciga, leasing agent Rebecca Smith called Mr. Jeanty and told him that there was

one one-bedroom apartment available for rent for $1,201 dollars or $1,276 dollars with upgrades. Mr. Jeanty thanked Ms. Smith for giving him the correct information.

**Count I**

**Violations of the Fair Housing Act**

126.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

127.    Defendants, in violation of 42 U.S.C. § 3604, have discriminated against Plaintiffs Smith, Holston, Roberson, Rose, and Davis because of their race.

128.    Defendants, in violation of 42 U.S.C. § 3617, have discriminated against Plaintiff Smith on account of Ms. Smith having aided or encouraged black persons in exercise and enjoyment of their rights under the Fair Housing Act.

129.    Defendants' violations of 42 U.S.C. §§ 3604 and 3617 have also caused harm to Plaintiff HOPE.

130.    Defendant, Beverly Hills Club Apartments, L.L.C., as the owner and operator of the property located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 3604 and 3617, because, at all times relevant hereto, Defendants Rivero and Garciga were acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent of Defendant Beverly Hills Club Apartments, L.L.C.

131.    Defendant, United Property Management, Inc., as the company responsible for the management of the property located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is also liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 3604 and 3617, because, at all times relevant hereto, Defendants Rivero and Garciga were acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent of Defendant United Property Management, Inc..

132.    Defendant, Idalio Rivero, while acting as the manager and agent of the property owned by Defendant, Beverly Hills Club Apartments, L.L.C., managed by Defendant United Property Management, Inc., and located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 3604 and 3617.

133.    Defendant, Rusthbell Katherina Garciga, while acting as the agent of the property owned by Defendant, Beverly Hills Club Apartments, L.L.C., managed by Defendant United Property Management, Inc., and located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is liable for the violation of Plaintiffs' rights under 42 U.S.C. § 3604.

## Count II

### Violation of the Civil Rights Act of 1866

134.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

135.    Defendants' pattern, practice, and policy of discrimination has denied Plaintiffs Smith, Holston, Roberson, Rose, and Davis the same rights enjoyed by non-Black citizens to contract for and to lease real property in violation of 42 U.S.C. §§ 1981 and 1982.

136.    Defendants, in violation of 42 U.S.C. §§ 1981 and 1982, have discriminated against Plaintiff Smith by denying her employee housing on account of her having aided or encouraged black persons in exercise and enjoyment of their rights under the Civil Rights Act.

137.    Defendants' violations of 42 U.S.C. §§ 1981 and 1982, have caused harm to Plaintiff HOPE.

138.    Defendant, Beverly Hills Club Apartments, L.L.C., as the owner and operator of the property located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 and 1982, because, at all

times relevant hereto, Defendants Rivero and Garciga were acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent of Defendant, Beverly Hills Club Apartments, L.L.C.

139.     Defendant, United Property Management, Inc., as the company responsible for the management of the property located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is also liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 and 1982, because, at all times relevant hereto, Defendants Rivero and Garciga were acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent of Defendant United Property Management, Inc.

140.     Defendant, Idalio Rivero, while acting as the manager and agent of  the property owned by Defendant, Beverly Hills Club Apartments, L.L.C., managed by Defendant United Property Management, Inc., and located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 and 1982.

141.     Defendant Rusthbell Katherina Garciga, while acting as the agent of  the property owned by Defendant, Beverly Hills Club Apartments, L.L.C., managed by Defendant United Property Management, Inc., and located at 19455 NE 10th Avenue, North Miami Beach, Dade County, Florida, is liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 and 1982.

## Relief Sought

WHEREFORE, Plaintiffs respectfully request that the Court:

A.   declare the actions of Defendants complained of herein to be in violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq. and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982;

B.  order Defendants to take appropriate affirmative actions to ensure that the activities complained of above are not engaged in again by them or any of their agents;

C.  permanently enjoin Defendants, their agents, employees, and successors from discriminating on the basis of race against any persons in violation of the Fair Housing Act of 1965 or the Civil Rights Act of 1866;

D.  award compensatory and punitive damages to Plaintiffs Smith, Holston, Roberson, Rose, and Davis against Defendants, to compensate Plaintiffs Smith, Holston, Roberson, Rose, and Davis for, among other things, the humiliation, embarrassment, and emotional distress caused by Defendants' discriminatory actions, and loss of equal housing rights;

E.  award compensatory and punitive damages to Plaintiff Housing Opportunities Project for Excellence, Inc., against the Defendants to compensate Plaintiff Housing Opportunities Project for Excellence, Inc., for, among other things, the drain on its resources that can be attributed to the frustration of Plaintiff Housing Opportunities Project for Excellence, Inc.'s, purpose of enforcing the fair housing laws in Florida and providing housing counseling and referral services;

F.  award appropriate punitive and compensatory damages to Plaintiff Housing Opportunities Project for Excellence, Inc., and against Defendants for, among other things, the mental and emotional distress, humiliation, and embarrassment suffered by Plaintiff Housing Opportunities Project for Excellence, Inc.'s, members and constituents, because of Defendants' discriminatory practices, which directly affect its members' and constituents' rights to live in a community where persons are not discriminated against because of race;

{07116064;1}

G.  award Plaintiffs Smith, Holston, Roberson, Rose, Davis, and Housing Opportunities Project for Excellence, Inc., their costs and reasonable attorneys' fees in this action; and

H.  award Plaintiffs Smith Holston, Roberson, Rose, Davis, and Housing Opportunities Project for Excellence, Inc., such other and further relief as the Court deems just and proper.

**<u>Demand for Jury Trial</u>**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable in this matter.

Respectfully submitted,

Randall C. Berg, Jr., Esq.
Florida Bar No. 318371
*RBerg@FloridaJusticeInstitute.org*
Dante P. Trevisani, Esq.
Florida Bar No. 72912
*DTrevisani@FloridaJusticeInstitute.org*

Florida Justice Institute, Inc.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (FAX)

Attorneys for Plaintiffs

By:  ___*s/Randall C. Berg, Jr.*___
           Randall C. Berg, Jr., Esq.