IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:15-cv-23450-KMM

REBECCA SMITH, HOUSING
OPPORTUNITIES PROJECT FOR
EXCELLENCE, INC. ("HOPE"),
ELIZABETH HOLSTON, JASMIN
ROBERSON, JASON ROSE, ANDRE
WHITE, SARA WHITE, G.W., S.W.,
KELVEN DAVIS, and ALEXIS
CAMPBELL,

      Plaintiffs,

v.

BEVERLY HILLS CLUB APARTMENTS,
LLC, UNITED PROPERTY
MANAGEMENT, Inc., IDALIO RIVERO,
and RUSTHBELL KATHERINA
GARCIGA,

      Defendants.
_____/

## OMNIBUS ORDER

THIS CAUSE came before the Court upon Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 32); Defendants' Motions to Dismiss and/or Stay and Compel Arbitration as to Plaintiff Rebecca Smith (ECF Nos. 18, 21); and Defendants' Motions to Dismiss the First Amended Complaint or for a More Definite Statement (ECF Nos. 19, 20). The Motions have been fully briefed and are now ripe for review. UPON CONSIDERATION of the Motions, the pertinent portions of the Record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.**   **BACKGROUND**

Plaintiffs—ten individuals and the Housing Opportunities Project for Excellence, Inc. ("HOPE"), a nonprofit housing advocacy agency—bring this Action pursuant to the Fair Housing Act and the Civil Rights Act of 1866. *See generally* Am. Compl. (ECF No. 5). Plaintiffs allege discrimination on the basis of race, with respect to leasing policies and practices at the Aventura Harbor Apartments in Miami, Florida ("Aventura Harbor"). *Id.* According to the allegations in the First Amended Complaint, Defendant Beverly Hills Club Apartments, LLC ("Beverly Hills Club") is the owner of Aventura Harbor, *id.* ¶ 15, and Defendant United Property Management, Inc. ("United Property") is responsible for the management of Aventura Harbor. *Id.* ¶ 16. Defendants Idalio Rivero and Ruthsbell Katherina Garciga are the manager and leasing agent at Aventura Harbor, respectively. *Id.* ¶¶ 17, 18.

In January 2014, Plaintiff Rebecca Smith, an African American woman, signed a "Pre-Employment Application" (the "Application") with Best Labor Contractors LLC ("Best Labor Contractors"). *See* Def.'s Mot., Ex. A (ECF No. 18-1). The Application included an arbitration provision under which Smith agreed to "resolve any issues that may arise out of [her] employment through arbitration and waive the option of trial by jury." *Id.* Later that month, Smith began working at Aventura Harbor. Am. Compl. ¶ 19 (ECF No. 5).

Smith alleges that during her twenty-one month tenure at her job, she observed racist policies and practices at Aventura Harbor. *Id.* ¶ 20. Smith further alleges that she received discriminatory treatment when she was denied the same employee benefits and discounts afforded to non-African American workers at Aventura Harbor. *Id.* ¶¶ 26–38. Specifically, Smith contends that Aventura Harbor offers its employees a twenty-five percent discount in rent, or a fifteen percent discount in rent at one of the sister properties. *Id.* ¶ 28. Smith claims that when she applied for an apartment at Aventura Harbor to live in with her sister, she was offered

only a fifteen percent discount. *Id.* ¶ 29. In addition, Smith contends that Defendant Rivero told Smith that she would have to pay a one hundred and twenty-five dollar per month fee for an upgraded kitchen and washer/dryer unit, which Smith claims at least one Aventura Harbor employee was not being charged for. *Id.* ¶¶ 31, 32. Smith also states that she was asked to provide her own and her sister's identification cards, social security numbers and proofs of income in order for Aventura Harbor to conduct background checks, something allegedly not required of other non-African American employees. *Id.* ¶¶ 33, 34. In the Amended Complaint, Smith alleges that these discriminatory actions amount to violations of Section 3604 and 3617 of the Fair Housing Act, and Sections 1981 and 1982 of the Civil Rights Act of 1866. *See generally id.*

Unlike Smith, the other nine Plaintiffs are not employees at Aventura Harbor. In 2015 Plaintiff HOPE began to test for race discrimination at Aventura Harbor. *Id.* ¶ 39. Plaintiffs Holston, Roberson and Rose are African American testers for HOPE who sought information from Defendants about the availability of apartments at Aventura Harbor. *Id.* ¶¶ 6–8. Plaintiffs Andre White, Sara White, G.W., S.W., Davis and Campbell are African American individuals who, independent of HOPE, sought information about the availability of apartments at Aventura Harbor. *Id.* ¶¶ 9–14. In the Amended Complaint, Plaintiffs Holston, Roberson, Rose, Andre White, Sarah White, G.W., S.W., Davis and Campbell allege that Defendants denied them the same rights afforded to non-African American individuals seeking information on apartment rentals. *See generally id.*

Plaintiffs filed the Complaint on September 14, 2015 (ECF No. 1). Later that day, Plaintiffs filed their First Amended Complaint (ECF No. 5). In October 2015, Defendants Beverly Hills Club and United Property moved to dismiss or stay the action in favor of

3

arbitration as to Plaintiff Rebecca Smith (ECF No. 18), and separately moved to dismiss the Complaint or for a more definite statement (ECF No. 19), arguing that the Amended Complaint is an improper shotgun pleading. Defendants Rivero and Garciga filed the same two motions, each containing similar arguments to those filed by Beverly Hills Club and United Property (ECF Nos. 20, 21). On November 24, 2015, Plaintiffs moved for leave to file a second amended complaint (ECF No. 32). Defendants opposed the motion (ECF Nos. 42, 43), arguing that amendment would be futile. Plaintiffs' Reply brief also includes its response to Defendants' Motions to Dismiss or Stay the Complaint in Favor of Arbitration as to Plaintiff Rebecca Smith (ECF No. 48).

As explained more fully below, the Court now grants Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 32), and grants Defendants' Motions to Compel Arbitration as to Plaintiff Rebecca Smith (ECF Nos. 18, 20). Further, because the Court grants leave to amend the Complaint, Defendants' Motions to Dismiss for Failure to State a Claim (ECF Nos. 19, 21) are denied as moot.

**II.   DISCUSSION**

    **A.   Plaintiffs' Motion For Leave To File Second Amended Complaint**

Defendants oppose Plaintiffs' Motion for Leave to File Second Amended Complaint, arguing that amendment is futile because the proposed amendment remains a "shotgun" pleading that fails to put the Defendants on proper notice of the claims against them, and all of the new claims asserted in the proposed second amended complaint are subject to dismissal.

        1.   <u>The Court Should Freely Grant Leave To Amend</u>

District courts should freely grant leave to amend a pleading when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). Rule 15(a)'s policy of liberal amendment facilitates determination

of claims on the merits, and prevents litigation from becoming a "technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981). Thus, consistent with Rule 15(a), unless there is "substantial reason" to deny leave to amend, the court's discretion is not broad enough to permit denial. *Id.*

A court may find that there is "substantial reason" to deny leave to amend where amendment would be futile. *Id.*; *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Denial of leave to amend based on futility constitutes a legal conclusion by the court that the complaint, as amended, would necessarily fail. *See St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 189 F.3d 815, 822 (11th Cir. 1999); *Burger King Corp.*, 169 F.3d at 1320 ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal") (internal quotations omitted). "The futility threshold is akin to that for a motion to dismiss; thus if the amended complaint could not survive 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *Bill Salter Adver., Inc. v. City of Brewton, AL*, No. CIV.A. 07-0081-WS-B, 2007 WL 2409819, at *2 (S.D. Ala. Aug. 23, 2007) (citing *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss)).

The threshold standard for a plaintiff's complaint to survive dismissal is "exceedingly low." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). While "[m]ere labels and conclusions" and "formulaic recitations of the elements of a cause of action" are insufficient to satisfy the requirements of the Federal Rules, the pleader need not provide detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. With this purpose in mind, and heeding the Federal Rules' liberal amendment policy, the Court now turns to the proposed second amended complaint.

        2.    <u>The Proposed Second Amended Complaint Is Not An Impermissible 'Shotgun' Pleading</u>

Complaints that violate Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as 'shotgun' pleadings. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015); *Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008). The Eleventh Circuit has described 'shotgun' pleadings as those which are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before a jury, can be masked." *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 n.14 (11th Cir. 1985). More recently, in *Weiland*, the Eleventh Circuit outlined the four categories of shotgun pleadings as follows:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of [s]hotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is a the relatively rare sin of asserting multiple claims against multiple defendants without specifying which one of the defendants are responsible for which acts or omissions, or which of the defendants the claims is brought against.

792 F.3d at 1321-23.  The "unifying characteristic" of the four categories is that "they fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1323.

Defendants argue that the proposed second amended complaint is a 'shotgun' pleading because it asserts multiple causes of action under a single count and fails to distinguish which of the defendants is responsible for which acts or omissions.  Eleventh Circuit cases, and indeed the cases cited by Defendants, which discuss this procedural shortcoming, illustrate the difference between the proposed second amended complaint and true 'shotgun' pleadings.  For example, in *Novak v. Cobb County Kennestone Hospital Authority* the Eleventh Circuit held that the complaint was a "quintessential 'shotgun pleading'" where, in a single count, plaintiff alleged deprivations of

> (a) His right to be free from deprivation of life, liberty, or property without due process of law under the Fourteenth Amendment . . . made applicable to the States by the Fourteenth Amendment . . . .
> (b) His right to be free from the deprivation of life. Liberty, or property, without due process of law under the Fourteenth Amendment . . . .
> (c) His right of religious freedom under the First Amendment . . . , made applicable to the States by the Fourteenth Amendment . . . .
> (d) His right of personal privacy protected by virtue of the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments . . . .
> (e) His right to equal protection of law under the Fourteenth Amendment . . . .
> (f) His right to freedom of contract, protected by the Fifth Amendment and/or the Fourteenth Amendment . . . .
> (g) His right to have his privileges and immunities as a citizen of the United States free from abridgement by the State of Georgia contrary to the Fourteenth Amendment . . .; and
> (h) His right to be free from deprivation of his liberty interest in maintaining his familial relationship with his mother under the Fourteenth Amendment . . . .

74 F.3d 1173, 1176 (11th Cir. 1996); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ('shotgun' pleading where "rambling irrelevancies" muddied the "General Factual Allegations" which alleged that all the defendants participated in each act the Plaintiff

7

complained of); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) ('shotgun' pleading where count one purported to plead at least nine discrete theories of recovery including negligent breach of duty; negligent hiring, training, supervision, discipline and retention of personnel; negligence per se; breach of fiduciary relationship; misrepresentation; fraud in the inducement and the act; undue influence; duress; and intentional infliction of emotional distress); *Cole v. United States*, 846 F.2d 1290, 1291-93 (11th Cir. 1988) (complaint was "a rambling, 'shotgun' pleading" where framed in one count).

 Here, Plaintiffs' proposed second amended complaint sets forth a detailed account of the extensive factual allegations. The facts are broken up into discrete sets of Plaintiffs, and clearly delineate the conduct that forms the basis of Plaintiffs' claims. Each individual count does not present multiple theories of recovery, but rather outlines which Defendants committed unlawful conduct against which Plaintiffs based on the same theories of recovery. In doing so, the individual counts demonstrate the difference between each Plaintiff's allegations against the various Defendants. This is hardly a "rambling 'shotgun' pleading" framed in one count like those courts in this Circuit frown upon. *See Cole*, 846 F.2d at 1291. Nor is it a pleading which contains "general factual allegations" which do not distinguish the conduct of various defendants. *See Magluta*, 256 F.3d at 1284. Further, contrary to Defendants' contentions, the Court does not feel forced to "engage in the cumbersome task of sifting through the claims to weed out irrelevancies," as the Court cannot find, and Defendants present no evidence of, glaring irrelevancies included in the proposed second amended complaint. *See* Defs. Rivero & Garciga's Resp. (ECF No. 42). Accordingly, Defendants have failed to demonstrate that the proposed second amended complaint is a 'shotgun' pleading.

The Court thus concludes that the proposed second amended complaint adequately gives the Defendants notice of the claims against them. As such, and keeping in mind the liberal amendment policy, the Court holds that amendment is not futile. The Court chooses not to address Defendants' remaining arguments regarding Plaintiffs' proposed additional claims, as those arguments will be more appropriately addressed upon a motion to dismiss should the Plaintiffs choose to include the additional counts in the second amended complaint.

### B. Defendants' Motions To Dismiss And/Or Stay And Compel Arbitration As To Plaintiff Rebecca Smith's Claims

Defendants[1] contend that all of Smith's claims arise from her employment with United Property and therefore must be dismissed or stayed in favor of arbitration pursuant to the terms of the Application. Smith responds by arguing that: (1) no valid arbitration agreement existed because the Application does not constitute a contract; (2) Defendants are not signatories to the Application; (3) even if the Application is a contract, it cannot be enforced because it is unconscionable; and (4) Smith's claims are outside the scope of the arbitration clause.

#### 1. Applicable Law

The validity of an arbitration agreement is governed by the Federal Arbitration Act ("FAA"). *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1309 (S.D. Fla. 2009) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312-13 (11th Cir. 2002)). The FAA provides that a court must either stay or dismiss a lawsuit and compel arbitration upon a showing that "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that

---

[1] Smith does not direct her claims against Defendant Garciga. *See generally* Am. Compl. Accordingly, the Court does not need to address whether Garciga may compel arbitration.

agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. §§ 2–4).

"The FAA establishes a 'federal policy favoring arbitration . . . requiring that [courts] rigorously enforce agreements to arbitrate.'" *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). Indeed, pursuant to this policy, courts must construe "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985). Thus the party opposing arbitration has the burden, "not unlike that of a party seeking summary judgment," of showing why the court should not compel arbitration. *Bhim*, 655 F. Supp. 2d at 1310 (citing *Aronson v. Dean Witter Reynolds, Inc.*, 675 F. Supp. 2d 1324, 1325 (S.D. Fla. 1987) (citations omitted)).

Although the FAA governs applicability of arbitration agreements generally, state law governs issues concerning contract principles, such as whether an enforceable contract exists. *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1367 (S.D. Fla. 2008). The Parties do not dispute that Florida law governs in this case.

    2. <u>Smith's Application For Employment Constitutes A Binding Contract</u>

Smith argues first that the plain language of the Application, namely, the title "Pre-Employment Application" and the language "[t]his application does not constitute an agreement or contract for any specified period or definite duration," shows that Smith did not intend for the Application to be a binding contract. Smith cites *Johnson v. All American Life Insurance Company*, 838 F. Supp. 1556, 1559 (M.D. Fla. 1993), in which the Court held that an application for life insurance with the language: "This application is not a contract for insurance," did not constitute a contract. *Id.* In so analogizing, Smith seemingly ignores half the sentence in her

Application, as the agreement does not, in fact, state that the Application is not a contract. To the contrary, the Application states that the Application is not a contract *defined by a specified time*. *Johnson* is also distinguishable because there, the court had evidence in the form of sworn affidavits that the insurance company never issued a life insurance policy following the application. *Id.* Thus in *Johnson*, the application amounted to no agreement at all, as the insurance company never accepted his application. Smith presents no such evidence, and indeed could not, as Smith was ultimately hired for the job she applied.

Second, Smith argues that the mere promise to be considered for at-will employment did not constitute sufficient consideration to form a binding contract. Smith's argument is without merit. Under Florida law, "'[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something she is not already obligated to do.'" *Bhim*, 655 F. Supp. 2d at 1312 (quoting *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005)). Courts, including the Supreme Court of the United States, have held that employment applications like the one signed by Smith, have sufficient consideration to constitute binding contracts. *See EEOC v. Waffle House*, 534 U.S. 279, 282–83 (2002) (interpreting a clause in an employment application as a valid and enforceable contractual obligation); *Henry v. Pizza Hut of Am., Inc.*, No. 607CV-01128-ORL-DAB, 2007 WL 2827722, at *5 (M.D. Fla. Sept. 27, 2007) (rejecting plaintiff's argument that a pre-employment application lacked consideration). In *Henry*, the court concluded that the plaintiff's submission of an employment application, and defendant's subsequent review of that application constituted sufficient consideration. *Henry*, 2007 WL 2827722 at *5. Based on the same reasoning, the Court concludes that the Application in this case is supported by consideration.

Third, Smith argues that the Application fails for lack of reciprocal obligation to arbitrate. Smith cites *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1550 (11th Cir. 1985) and *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997) for the proposition that non-reciprocal arbitration agreements are unenforceable for lack of mutuality. But *Hull* concerned New York's principles of contract law, and *Gibson* concerned Indiana's. Florida has specifically chosen not to adopt the mutuality doctrine applied in *Hull* and *Gibson*, and instead considers mutuality of obligation to be met if each side gives some consideration to the other.[2] *See LaBonte Precision, Inc. v. LPI Indus. Corp.*, 507 So. 2d 1202, 1203 (Fla 4th DCA 1987) ("[W]here there is no other consideration for a contract, mutual provisions must be binding on both parties, but where there is any other consideration for the contract, mutuality of obligation is not essential."). Here, as explained above, the Application does not want for consideration. The Court thus rejects Smith's argument as to the non-reciprocal nature of the arbitration provision. Based on the foregoing, the Court concludes that the Application constitutes a valid and binding contract.

        3.    <u>Defendants United Property, Beverly Hills And Rivero Can Compel Arbitration</u>

Smith argues next that, even if the Application constitutes a binding contract, Defendants are non-signatories and thus the arbitration clause does not apply to Smith's claims against them. State law governs whether an arbitration clause is enforceable against a non-signatory under the FAA. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Under Florida law, ordinarily, non-parties to a contract cannot compel parties to a contract to arbitrate. *See Florida*

---

[2] New York, as well, has abandoned the doctrine set forth in *Hull*. *See, e.g. Sablosky v. Edward S. Gordon Co.*, 535 N.E.2d 643, 646 (N.Y. 1989). New York courts now hold that "[i]f there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement." *Id.*, 535 N.E.2d at 646.

*Power & Light Co. v. Road Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th DCA 2006). There is, however, an exception that is relevant to this case: a non-signatory can compel arbitration if it is determined that the party is a third party beneficiary to the contract. *Id.* at 203 (citing *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d 324, 326 (Fla. 4th DCA 1999)). "A third party is an intended beneficiary, and thus able to sue on a contract, only if the parties to the contract intended to primarily and directly benefit the third party." *Aetna Cas. & Sur. Co. v. Jelac Corp.*, 505 So. 2d 37, 38 (Fla. 4th DCA 1987). "Florida looks to the 'nature or terms of a contract' to find the parties' clear or manifest intent that it 'be for the benefit of a third party.'" *Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 524 (Fla. 4th DCA 2002) (quoting *Am. Sur. Co. of N.Y. v. Smith*, 130 So. 440, 441 (Fla. 1930)).

It is clear from the nature and terms of the Application that both Smith and Best Labor Contractors intended United Property to be a third party beneficiary of the Application. The Application repeatedly refers to "the employer," and United Property was Smith's ultimate employer. *See* Def.'s Mot., Ex. A (ECF No. 18-1). Moreover, Smith signed the Application for the sole purpose of securing employment with United Property. The Court thus agrees with United Property that it can compel arbitration of Smith's claims against it.

Less clear, however, is whether the Defendants Beverly Hills Club and Rivero can compel arbitration as non-signatories to the Application. Defendants argue that under the doctrine of equitable estoppel they can compel arbitration of Smith's claims. Pursuant to the doctrine of equitable estoppel, Florida courts have recognized that a non-signatory may compel arbitration "when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract." *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003). Smith's

allegations as to United Property, Rivero, and Beverly Hills Club concern the treatment Smith received as an African American employee of United Property. Beverly Hills Club is the owner of Aventura Harbor, which is managed by United Property through its employee Rivero. It is apparent that Smith's claims against United Property, the intended beneficiary of the Application, are based in concerted conduct with Defendants Beverly Hills Club and Rivero. The Court thus concludes that all three may compel arbitration.

      4.      The Arbitration Agreement Is Not Unconscionable

To prevail on the defense that a contract is unconscionable under Florida law, the party asserting the defense must establish that the contract is both procedurally and substantively unconscionable. *Bhim*, 655 F. Supp. 2d at 1313 (citing *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989); *Murphy v. Courtesy Ford LLC*, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006); *Voicestream Wireless Corp. v. U.S. Commc'ns., Inc.*, 912 So. 2d 34, 39 (Fla. 4th DCA 2005)). Procedural unconscionability relates to the manner in which a contract was made and requires consideration of the parties' relative bargaining power and their understanding of the terms of the contract. *Bhim*, 655 F. Supp. 2d at 1313. Substantive unconscionability relates to the agreement itself and requires a showing that the terms of the agreement are so "outrageously unfair" as to "shock the judicial conscience." *Golden*, 882 F.2d at 493; *Henry*, 2007 WL 2827722 at *4 ("An agreement will only be found substantively unconscionable if the terms are 'so outrageously unfair as to shock the judicial conscience.'") (quoting *Bland ex. Rel. Coker v. Health Care & Retirement Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006)).

Smith argues that the arbitration agreement contained within the Application is procedurally unconscionable because of the presence of the boilerplate language, the small typeface of the arbitration clause, and the take-it-or-leave-it nature of the Application. The Court

disagrees with Smith. First, boilerplate language does not automatically render the contract unconscionable. *See Milsap v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV, 2007 WL 965590, *2 (S.D. Fla. Mar. 28, 2007) (holding that consent was not involuntary simply because the provision was part of a standard form contract or contained boilerplate language). Second, Smith's argument that the arbitration agreement was printed in small font ignores the fact that the Application is comprised of only two pages. Of those two pages, only one paragraph was designated to stating the terms and obligations of the Application. The arbitration clause was thus not hidden in a "maze of fine print," *Powertel v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999), and Smith "cannot avoid her contractual responsibility simply because she chose not to review the terms of her agreement." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010).

Finally, "[t]he law is quite clear that contract terms are not automatically stripped of validity when the drafter proffers them on a take-it-or-leave-it basis." *Petersen v. Florida Bar*, 720 F. Supp. 2d 1351, 1359 (M.D. Fla. 2010) (citations omitted); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (finding that "mere inequality of bargaining power," absent "fraud or overwhelming economic power" was insufficient to invalidate employee arbitration agreement); *Henry*, 2007 WL 2827722 at *7 (concluding that defendant's agreement "may have been on 'take or leave it' terms, but Plaintiff was free, in this case, to 'leave it'"); *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 40 (Fla. 4th DCA 2005) (finding the inability to negotiate terms in a wireless provider's contract did not render the terms procedurally unconscionable); *Ware Else, Inc. v. Ofstein*, 856 So. 2d 1079, 1082 (Fla. 5th DCA 2003) (noting that "the vast majority of employment agreements are 'take-it-or-

leave-it' propositions" and "if [plaintiff] did not like the terms of the agreement, she could indeed have left it").

Smith presents no evidence here that she tried to negotiate the arbitration provision when she signed the Application. Smith argues that she was asked to fill out the Application quickly and was not given a copy of the arbitration provision to review or consider. But the arbitration clause was contained in the short list of provisions which were included in the two-page Application that Smith signed. Moreover, if Smith truly was not given the time to review the short paragraph of obligations and rights that she agreed to when she signed the Application, she could have asked for more time. Smith's own failure to review the document that she signed in order to apply for employment does not make the arbitration clause in the Application procedurally unconscionable. *See Pendergast*, 529 F.3d at 1135. Because Smith fails to establish procedural unconscionability, and because the arbitration agreement does not shock the conscience of this Court, the Court finds that the arbitration agreement is not unconscionable.

        5.      <u>Smith's Claims Fall Within The Scope Of The Arbitration Agreement</u>

As Smith correctly contends, Florida courts have held that arbitration clauses which compel arbitration for disputes "arising out of the contract," restrict arbitration to claims relating to the interpretation of the contract and matter of performance. *See, e.g.*, *Jackson v. Shakespeare Found. Inc.*, 108 So. 3d 587, 593 (Fla. 2013); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). But the arbitration clause in this case does not compel arbitration for claims arising out of the contract. Rather, Smith agreed, when she signed the Application, to "resolve any issues that may arise out of [her] *employment* through arbitration." Def.'s Mot., Ex. A (ECF No. 18-1) (emphasis added).

Thus, for Smith's claims to fall within the scope of the arbitration agreement, they must arise out of her employment. "[W]hen deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted." *Club Mediterranee, S.A. v. Fitzpatrick*, 162 So. 3d 251, 252 (Fla. 3d DCA 2015) (citing *Jonas v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009)); *Jackson*, 108 So. 3d at 592-93) (internal quotations omitted). Against this backdrop, the Court concludes that Smith's claims do indeed arise out of her employment. In the Amended Complaint, Smith complains that she was denied rights and benefits extended to other, non-African American employees of United Property, including employee discounts and accommodations. The facts that Smith alleges to establish discrimination by Defendants United Property, Beverly Hills Club and Rivero thus arise out of, and would not exist but for, Smith's employment. Accordingly, the Court finds that Smith's claims fall within the scope of the arbitration agreement.

      6.     <u>The Court Chooses To Dismiss Smith's Claims</u>

A case in which the court has compelled arbitration "may be dismissed 'in the proper circumstances,' such as 'when *all* the issues raised in . . . court must be submitted to arbitration.'" *Olsher Metals Corp. v. Olsher*, 01-3212-CIV, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (collecting cases)); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) (affirming district court's dismissal of claims in favor of arbitration). Having determined that all of Smith's claims must be submitted to arbitration, the Court now chooses to dismiss Smith's claims without prejudice.

**III.   CONCLUSION**

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED:

A. Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 32) is GRANTED.

B. Defendants United Property, Beverly Hills Club and Rivero's Motions to Dismiss and/or Stay and Compel Arbitration as to Rebecca Smith's Claims (ECF Nos. 18, 21) are GRANTED. Plaintiff Rebecca Smith's claims are COMPELLED to arbitration and DISMISSED WITHOUT PREJUDICE.

C. Defendants' Motions to Dismiss the First Amended Complaint or For a More Definite Statement (ECF Nos. 19, 20) are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of January, 2016.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record